[Cite as *State v. Sarge*, 2021-Ohio-4379.]

COURT OF APPEALS
KNOX COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | Case No. 21CA000014 |
| | : | |
| CALEB SARGE | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:       Appeal from the Knox County Court of
                               Common Pleas, Case No. 19CR12-324



JUDGMENT:                      AFFIRMED



DATE OF JUDGMENT ENTRY:        December 9, 2021



APPEARANCES:


For Plaintiff-Appellee:                    For Defendant-Appellant:

CHARLES T. MCCONVILLE                      TODD W. BARSTOW
KNOX COUNTY PROSECUTOR                     261 W. Johnstown Rd., Suite 204
117 E. High St., Suite 234                 Columbus, OH 43230
Mount Vernon, OH 43050

*Delaney, J.*

{¶1} Defendant-Appellant Caleb Sarge appeals from the April 12, 2021 sentencing entry of the Knox County Court of Common Pleas.

**FACTS AND PROCEDURAL HISTORY**

{¶2} On December 2, 2019, the Knox County Grand Jury indicted Defendant-Appellant Caleb Sarge on one count of murder (with a firearm specification), an unclassified felony in violation of R.C. 2903.02(A), and one count of tampering with evidence, a third-degree felony in violation of R.C. 2921.12(A)(1). Sarge entered a plea of not guilty to the charges and the matter proceeded to a jury trial on March 9, 2021.

{¶3} We recite the facts adduced at trial but note that on appeal, Sarge does not dispute that he shot and killed the victim, John Serio. The issue in this case is whether Sarge acted in self-defense when he shot Serio.

{¶4} On November 25, 2019 at approximately 7:30 p.m., the Knox County dispatch received a call on its non-emergency line. The female caller said she had information of a dead body in the area of Calhoun Street and North Sandusky Drive in Mount Vernon, Ohio. The female caller told the dispatch that Sarge had called her, told her he had cut John Serio's wrist, and Serio was lying on the floor of Sarge's residence. Police officers with the Mount Vernon Police Department were dispatched to search the area. During their search, they observed Sarge standing outside 608 North Sandusky Street, where he called out to them. The officers told Sarge they were there because of a complaint about John Serio. Sarge told the officers that Serio was laying on the floor inside his house. When asked why he was on his floor, Sarge responded, "He came at me so I shot him." (T. 215).

{¶5} Sarge was detained and read his Miranda rights. The officers entered the house and found Serio laying on the floor in the rear of the residence. He was cold to the touch and not breathing. An officer asked Sarge where he shot Serio because he could not see a gunshot wound and there was no blood; Sarge said it was in Serio's left side, up high. Serio was declared dead at the scene. Sarge told the police the gun he used to shoot John Serio was located on the kitchen table, upon which the officers found a .22 caliber, single action revolver.

{¶6} After a search warrant was obtained, the premises were searched. In the kitchen, the officers discovered a cell phone belonging to Serio sitting in a cooking pot full of water. Two cell phones that belonged to Sarge were discovered in the foyer and under a dining room table.

{¶7} Sarge was taken into custody and interviewed by the police on two occasions. Sarge was asked how he came to know Serio. Sarge was an admitted drug dealer and Serio had issues with substance abuse. Sarge said he had known Serio for a couple of weeks and recently, Serio was staying in Sarge's basement. When the detective asked Sarge if he was scared of Serio, Sarge said he really wasn't, but something just snapped.

{¶8} Serio made a written statement during the first interview, where he admitted to shooting Serio. According to Sarge's statement, on the evening on November 25, 2019, Sarge said Serio had not used drugs all day and wanted some Adderall, but he did not have any money to get it. Serio asked Sarge for the money, but Sarge would not give it to him. They began to argue about it. Sarge claimed he was seated in a chair in the front living room and had the .22 caliber revolver at his side. Sarge said he usually carried the

gun with him for his protection. Serio confronted Sarge, Sarge got out of the chair and said they were neck and neck, but Sarge's arm was fully stretched. Serio allegedly told Sarge he was going to beat his ass. Sarge was six foot, three inches tall and weighed over 500 pounds. Serio was five feet, eight inches tall and weighed 170 pounds. Sarge said he knew that Serio usually carried a knife and there were knives on the kitchen table. Serio grabbed for the gun and Sarge thought he touched the barrel. Sarge believed Serio was going for the gun and the gun went off. A witness from the BCI firearms section testified that a functioning single action revolver, which Sarge's gun was, will not discharge unless the hammer is cocked and then the trigger pulled.

{¶9}  Serio was shot once in the left chest and the coroner found the bullet passed through both lungs and the heart, grazed the aorta, and caused significant internal hemorrhaging. Serio collapsed after he was shot. After he was shot, Serio said, "Help, 911," but Sarge stood over Serio for a few minutes. Sarge made phone calls to his mother and friends, after which one of his friends called 911. Another friend testified that Sarge called her after he shot Serio. When she asked how it happened, Sarge told her they had gotten into an argument over money and drugs that Serio supposedly had not gotten. Sarge told her he did not know whether to shoot Serio again or get rid of his body. He sent her a message on Facebook asking if she knew anywhere to get rid of Serio's body. He asked her to come to Mount Vernon to help him take care of it. The friend thought Sarge was asking her to "help him get rid of John's body or help him talk to the cops pleading self-defense, because he was on the fence of either calling the cops or getting rid of John's body." (T. 514). When asked if Sarge told her it was self-defense, she replied,

"He told me that if he was gonna call the cops that he was going to try to tell them that it was self-defense." (T. 517).

{¶10} Sarge said he moved Serio's body from the front living room area to the rear of the residence. He admitted to putting Serio's cell phone in a pot of water in the kitchen.

{¶11} Sarge said there was a glass bubble pipe in Serio's hand when he was shot, which the police located during the search. The toxicology report showed that Serio had a significant amount of methamphetamine and amphetamine in his system at the time of his death, but it was unknown when Serio took the drugs.

{¶12} Serio's clothes were sent to the Cuyahoga County Medical Examiner's Office to determine the muzzle to target distance. At the time he was shot, Serio was wearing four shirts. Based on the medical examiner's analysis, it was determined the muzzle to target distance was greater than 21 inches and less than 36 inches from the end of the barrel of the .22 caliber revolver to the fabric of the outermost layer of clothing. The barrel of the revolver was 6.5 inches in length.

{¶13} The .22 caliber revolver was also analyzed for DNA evidence by the Bureau of Criminal Investigation. The major contributor of DNA on the weapon was determined to be Sarge. Female DNA was found on the front sight of the gun, but there was no standard to compare the DNA to. Other male DNA was also found on the weapon but there was insufficient quantity or quality to compare to a standard. The DNA analysis did not show, however, that Serio did not touch the end of the gun barrel.

{¶14} While Sarge put Serio's cell phone in a pot of water, BCI was able to dry the phone and retrieve messages on the phone. On November 25, 2019, Serio was

messaging with a person who asked Serio, "Can you do me a favor. We have this Jones shit. It's about a 20 I believe. Can you get rid of it for us, please. And do you know anyone who fucks with Addies." Serio responded, "Yes. What mg. Addy, no capsules." At 4:28 p.m., Serio sent a message that says, "NVM, he's being a bitch." He sent another message that says, "I'm – I'm bout to whoop his fat ass."

{¶15} The defense presented one witness, Det. Terry Wolfe of the Knox County Sheriff's Office. Det. Wolfe testified that on November 20, 2019, he and Serio's probation officer detained Serio. Det. Wolfe, with Serio's permission, searched his cell phone and Det. Wolfe observed a conversation between Sarge and Serio regarding a hit on Sarge.

{¶16} At the conclusion of his case, Sarge moved for a dismissal pursuant to Crim.R. 29, which the trial court denied. The trial court then charged the jury including instructions as to self-defense. After deliberation, the jury found Sarge guilty of murder, tampering with evidence, and the firearm specification.

{¶17} The trial court ordered a presentence investigation prior to sentencing. A sentencing hearing was held on April 8, 2021, and the sentencing entry was journalized on April 12, 2021. The trial court sentenced Sarge as follows:

> It is the sentence of the Court that the Defendant serve an indefinite term of imprisonment of fifteen (15) years to life on Count One pursuant to Revised Code Section 2929.02(B)(1). The Court sentences the Defendant to a term of three (3) years on the firearm specification as to Count One, to be served consecutive and prior to the indefinite term on Count One, pursuant to Revised Code Section 2929.14(B)(1)(a)(ii). The Court sentences the Defendant to a definite term of imprisonment of thirty-six

months on Count Two, to be served consecutive to the sentence imposed in Count One. The Defendant is given 499 days jail time credit, along with future days while awaiting transportation to the appropriate institution. The Defendant is Ordered to pay $6,404.88 in restitution to the family of John Serio.

{¶18} It is from this sentencing entry that Sarge now appeals.

**ASSIGNMENTS OF ERROR**

{¶19} Sarge raises two Assignments of Error:

{¶20} "I. THE TRIAL COURT ERRED AND DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE SECTION TEN OF THE OHIO CONSTITUTION BY FINDING HIM GUILTY OF MURDER AND TAMPERING WITH EVIDENCE AS THOSE VERDICTS WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WERE ALSO AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶21} "II. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY SENTENCING HIM IN CONTRAVENTION OF OHIO'S SENTENCING STATUTES."

**ANALYSIS**

**I.**

{¶22} In Sarge's first Assignment of Error, he contends his convictions for one count of murder and one count of tampering with evidence were not supported by sufficient evidence and were against the manifest weight of the evidence. We disagree.

**Standard of Review**

{¶23} The criminal manifest-weight-of-the-evidence standard was explained in *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), in which the Court distinguished between "sufficiency of the evidence" and "manifest weight of the evidence," finding that these concepts differ both qualitatively and quantitatively. *Id.* at 386. The Court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. *Id.* at 386–387. "In other words, a reviewing court asks whose evidence is more persuasive—the state's or the defendant's?" *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25. The Court noted that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. *Thompkins, supra* at 387. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Id.*, citing *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982).

{¶24} In a test for sufficiency, " 'the relevant question is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis sic.) *State v. Stallings*, 89 Ohio St.3d 280, 289, 731 N.E.2d 159, quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). A sufficiency challenge asks whether the evidence adduced at trial "is legally sufficient to support the jury verdict as a matter of law." *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596,

at ¶ 219. Evaluation of the witnesses' credibility is not relevant to a sufficiency analysis. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, at ¶ 79.

{¶25} By contrast, to evaluate a manifest-weight claim, a court must review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, at ¶ 328. The court must decide whether " 'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed.' " *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

**Murder and Self-Defense**

{¶26} Sarge argues his conviction for murder was against the sufficiency of the evidence and the manifest weight of the evidence because the State failed to prove beyond a reasonable doubt that he did not act in self-defense when he shot Serio.

{¶27} Under Ohio law, a person is permitted to act in self-defense. Effective March 28, 2019, R.C. 2901.05 was amended so that self-defense was no longer an affirmative defense and the burden shifted to the prosecution to prove beyond a reasonable doubt that the accused did not use force in self-defense. *State v. Rengert*, 5th Dist. Delaware No. 19 CAA 10 0056, 2021-Ohio-2561, 2021 WL 3161194, ¶ 23. R.C. 2901.05(A), as amended, states, in relevant part:

> Every person accused of an offense is presumed innocent until proven guilty beyond a reasonable doubt, and the burden of proof for all elements of the offense is upon the prosecution. The burden of going forward with the evidence of an affirmative defense, and the burden of proof, by a preponderance of the evidence, for an affirmative defense other than self-

defense * * * as described in division (B)(1) of this section, is upon the accused.

{¶28} R.C. 2901.05(B)(1) further states:

A person is allowed to act in self-defense, defense of another, or defense of that person's residence. If, at the trial of a person who is accused of an offense that involved the person's use of force against another, there is evidence presented that tends to support that the accused person used the force in self-defense, defense of another, or defense of that person's residence, the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense, defense of another, or defense of that person's residence, as the case may be.

{¶29} The elements of self-defense differ depending upon whether the defendant, in defending themselves, used deadly or non-deadly force. "Deadly force" is defined as "any force that carries a substantial risk that it will proximately result in the death of any person." R.C. 2901.01(A)(2). A "substantial risk" means "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(8). *In re N.K.*, 6th Dist. Sandusky No. S-21-001, 2021-Ohio-3858, 2021 WL 5029661, ¶ 12. In this case, Sarge used deadly force by using the .22 caliber revolver to shoot Serio. *See State v. Dale*, 2nd Dist. Montgomery No. 2012 CA 20, 2013-Ohio-2229, 2013 WL 2406261, ¶ 15 ("The use of a gun constitutes the use of deadly force."); *See also State v. Estelle*, 3rd Dist. Allen No. 1-20-50, 2021-Ohio-2636, 2021 WL 3284988, ¶ 20.

{¶30} Regarding the elements of "deadly force" self-defense, the Supreme Court of Ohio has held:

> To establish [deadly force] self-defense, a defendant must prove the following elements: (1) that the defendant was not at fault in creating the situation giving rise to the affray; (2) that the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; *and* (3) that the defendant did not violate any duty to retreat or avoid the danger.

(Emphasis added.) *State v. Garner*, 5th Dist. Stark No. 2009CA00286, 2010-Ohio-3891, 2010 WL 3278670, ¶¶ 18-19 quoting *State v. Barnes*, 94 Ohio St.3d 21, 24, 759 N.E.2d 1240 (2002), citing *State v. Robbins*, 58 Ohio St.2d 74, 388 N.E.2d 755 (1979), paragraph two of the syllabus. Prior to the amendment of R.C. 2901.05, the above-stated elements of self-defense were for the defendant to establish by a preponderance of the evidence. *State v. Carney*, 10th Dist. Franklin No. 19AP-402, 2020-Ohio-2691, 2020 WL 2042924, ¶ 31 citing *State v. Martin*, 21 Ohio St.3d 91, 94 (1986). The revision to R.C. 2901.05, however, has placed the burden on the prosecution to disprove at least one of the elements of self-defense beyond a reasonable doubt. *Id.* citing R.C. 2901.05(B)(1); 2019 Am.Sub.H.B. No. 228.2. The Tenth District Court of Appeals determined in *State v. Carney, supra*, that pursuant to the amended statute of self-defense, the prosecution is required to disprove deadly force self-defense by proving beyond a reasonable doubt that the defendant "(1) was at fault in creating the situation giving rise to the affray, OR (2) did not have a bona fide belief that he was in imminent danger of death or great bodily harm

for which the use of deadly force was his only means of escape, OR (3) did violate a duty to retreat or avoid the danger." (Emphasis sic.) *Id.* at ¶ 31 citing R.C. 2901.05(B)(1); *Robbins, supra* at paragraph two of the syllabus.

{¶31} In the case sub judice, the State argues it proved at trial that Sarge did not have a bona fide belief that he was in imminent danger of death or great bodily harm for which the use of deadly force was his only means of escape. We look to the record to determine if the State met its burden to disprove self-defense and the verdict of murder was supported by the sufficiency of the evidence and the weight of the evidence.

{¶32} Before the shooting, Serio and his friend exchanged messages which confirmed Sarge's statement that Serio wanted to get Adderall and/or money from Sarge. Serio stated in the message that he was going to "whoop his fat ass," although the message did not state who Serio wanted to "whoop" or when. Sarge told the police that Serio came up from the basement and confronted Sarge, who was sitting in his chair. The toxicology report showed that Serio had methamphetamine and amphetamine in his system when he died.

{¶33} Sarge told the police in his interview that before the shooting, he and Serio were "neck and neck," but Sarge's arm was fully stretched. Sarge was six foot, three inches tall and weighed over 500 pounds. Serio was five foot, eight inches tall and weighed 170 pounds. Sarge had his gun with him and at some point he cocked the hammer because a single action revolver does not discharge unless the hammer is cocked and the trigger pulled. Sarge stated he knew Serio usually carried a knife, but he did not tell the police that he saw Serio with a knife when they were "neck and neck," and the police did not find a knife on Serio's body. There were knives on the kitchen table, but

Sarge did not tell the police that Serio had grabbed or attempted to grab one during the fight. In contrast, Sarge told the police that Serio was carrying a glass bubble pipe, which was found near his body.

{¶34} Sarge brandished his gun at Serio and Sarge said Serio grabbed for the gun, may have touched the barrel, and the gun went off. The State's evidence showed, however, the muzzle to target distance was 21 to 36 inches and the barrel of the gun was 6.5 inches long. The muzzle to target distance contradicts Sarge's statement that Serio was close to Sarge and his weapon when he was shot.

{¶35} After Serio was shot and lay dying on the floor, Sarge did not call the police. He moved Serio's body to the rear of the house. He put Serio's cell phone in a pot of water. He called multiple people, including a friend who testified Sarge told her that he was not sure if he was going to call the police or get her help to hide Serio's body. He also asked for her support if he called the police because he was going to try to tell them it was self-defense.

{¶36} "[T]the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts[,]" who is "free to believe all, part, or none of the testimony of each witness*." State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus; *Prince v. Jordan*, 9th Dist. Lorain No. 04CA008423, 2004-Ohio-7184, ¶ 35. "This Court will not overturn the trial court's verdict on a manifest weight of the evidence challenge only because the trier of fact chose to believe certain witness testimony over the testimony of others." *State v. Pittman*, 9th Dist. Summit No. 29705, 2021-Ohio-1051, 2021 WL 1230546, ¶ 16 citing *State v. Hill*, 9th Dist. Summit No. 26519, 2013-Ohio-4022, ¶ 15. This includes instances when a jury rejects a defendant's self-

serving testimony that he or she acted in self-defense. *See State v. Johnson*, 9th Dist. Lorain No. 13CA010496, 2015-Ohio-1689, ¶ 15 (acknowledging that a jury is free to reject a defendant's self-serving testimony, and that doing so does not render a conviction against the manifest weight of the evidence); *State v. Miller*, 3rd Dist. Marion No. 9-18-02, 2018-Ohio-3433, ¶ 41 (noting that the defendant's "self-defense claim rested essentially entirely on her own self-serving testimony[,]" and concluding that the jury could have found that testimony not credible).

{¶37} The only issue in this appeal is whether Sarge, armed with a gun and significantly larger in size than Serio, held a bona fide belief that he was in imminent danger of death or great bodily harm from Serio such that the use of deadly force was his only means of escape. The jury heard the evidence that Serio was known to carry a knife, was near knives during the fight, had methamphetamine and amphetamine in his system, and had threatened to "whoop" Sarge's ass, but the jury did not find that evidence outweighed the other evidence in the record showing Sarge was armed with a gun, the muzzle of Sarge's gun was 21 to 36 inches away from Serio when he was shot, Serio was unarmed, and he was significantly smaller in size than Sarge. The jury concluded that Sarge did not believe he was in imminent danger of death or great bodily harm from Serio such that the use of deadly force was his only means of escape.

{¶38} We review the entire record, weigh the evidence and all reasonable inferences as a thirteenth juror, including considering the credibility of witnesses, which we have done in our review. Accordingly, we cannot reach the conclusion that the jury clearly lost its way and created a manifest miscarriage of justice. We can determine from

our review that the jury could have found that the prosecution had proved Sarge was not genuinely in fear for his life when he shot an unarmed Serio from 21 to 36 inches away.

{¶39} From a sufficiency of evidence standpoint on the prosecution's statutory duty to disprove one of the elements of self-defense, we further find that, "viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found" that the prosecution disproved at least one of the "essential elements" of self-defense "beyond a reasonable doubt."

{¶40} As to the claim of self-defense, we find no error and the Assignment of Error is overruled.

### Tampering with Evidence

{¶41} In his first Assignment of Error, Sarge also argues his conviction for tampering with evidence was against the sufficiency and manifest weight of the evidence.

{¶42} The Ohio Revised Code defines the offense of tampering with evidence in relevant part as follows:

(A) No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:

(1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation.

R.C. 2921.12(A)(1).

{¶43} There is no dispute in this case that after he shot Serio, Sarge placed Serio's cell phone in a pot of water on the kitchen stove. (T. 281). During opening

arguments, defense counsel stated, "The phone was, John Serio's phone was then found in the water on the stove. I don't really have a lot of good explanations for that other than he was clearly trying to destroy the contents of the phone." (T. 187).

{¶44} After he shot Serio, Sarge moved Serio's body so it would not be seen. He called his friend and asked about hiding Serio's body. Viewing the evidence in a light most favorable to the State, it can be inferred that Sarge was seeking to destroy Serio's cell phone with purpose to impair its availability as evidence in the investigation as to Serio's death. We find the manifest weight of the evidence supports the jury's conclusion that Sarge acted with purpose to destroy the cell phone to impair its availability for an investigation into Serio's death.

{¶45} As to tampering with evidence, we no error and the Assignment of Error is overruled.

## II.

{¶46} The trial court sentenced Sarge to a definite term of imprisonment of 36 months on Count Two (tampering with evidence), to be served consecutive to the sentence imposed in Count One (murder). In his second Assignment of Error, Sarge argues that by imposing the maximum sentence for tampering with evidence, his sentence is contrary to law.

{¶47} R.C. 2953.08 governs appeals based on felony sentencing guidelines. Subsection (G)(2) sets forth this Court's standard of review as follows:

> (2) The court hearing an appeal under division (A), (B), or (C) of this section
>
> shall review the record, including the findings underlying the sentence or
>
> modification given by the sentencing court.

The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following: (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law.

{¶48} "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶49} A sentence is not clearly and convincingly contrary to law where the trial court "considers the principles and purposes of R.C. 2929.11, as well as the factors listed in R.C. 2929.12, properly imposes post release control, and sentences the defendant within the permissible statutory range." *State v. Morris*, 5th Dist. Ashland No. 20-COA-015, ¶ 90 quoting *State v. Dinka*, 12th Dist. Warren Nos. CA2019-03-022 and CA2019-03-026, 2019-Ohio-4209, ¶ 36.

{¶50} Tampering with evidence is a third-degree felony in violation of R.C. 2921.12(A)(1). The felony sentencing guidelines state as to third-degree felonies:

> (3)(a) For a felony of the third degree that is a violation of section 2903.06, 2903.08, 2907.03, 2907.04, 2907.05, 2907.321, 2907.322, 2907.323, or 3795.04 of the Revised Code or that is a violation of section 2911.02 or 2911.12 of the Revised Code if the offender previously has been convicted of or pleaded guilty in two or more separate proceedings to two or more violations of section 2911.01, 2911.02, 2911.11, or 2911.12 of the Revised Code, the prison term shall be a definite term of twelve, eighteen, twenty-four, thirty, thirty-six, forty-two, forty-eight, fifty-four, or sixty months.
>
> (b) For a felony of the third degree that is not an offense for which division (A)(3)(a) of this section applies, the prison term shall be a definite term of nine, twelve, eighteen, twenty-four, thirty, or thirty-six months.

R.C. 2929.14(A)(3). The trial court imposed the maximum sentence, 36 months, pursuant to R.C. 2929.14(A)(3)(b). Sarge does not dispute the 36-month sentence is within the permissible statutory range.

{¶51} Because the sentence is within the permissible statutory range, for the sentence to be contrary to law, this Court must determine whether the trial court considered the principles and purposes of R.C. 2929.11, as well as the factors listed in R.C. 2929.12 and properly imposed post release control. Sarge has made no argument on appeal that the trial court improperly imposed post release control. As such, we will examine the trial court's consideration of the principles and purposes of R.C. 2929.11, as well as the factors listed in R.C. 2929.12.

{¶52} R.C. 2929.11(A) governs the purposes and principles of felony sentencing and provides that a sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing, which are (1) to protect the public from future crime by the offender and others, and (2) to punish the offender using the minimum sanctions that the court determines will accomplish those purposes. Further, the sentence imposed shall be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes by similar offenders." R.C. 2929.11(B).

{¶53} R.C. 2929.12 sets forth the seriousness and recidivism factors for the sentencing court to consider in determining the most effective way to comply with the purposes and principles of sentencing set forth in R.C. 2929.11. The statute provides a non-exhaustive list of factors a trial court must consider when determining the seriousness of the offense and the likelihood that the offender will commit future offenses.

{¶54} In *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, the Ohio Supreme Court discussed the effect of *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, on felony sentencing. The *Foster* Court severed the judicial-fact-finding portions of R.C. 2929.14, holding that "trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." *State v. Kinser*, 5th Dist. Licking No. 2020 CA 00032, 2020-Ohio-5308, 2020 WL 6737507, ¶ 31 quoting *Kalish, supra* at ¶ 1 and ¶ 11, citing *Foster* at ¶ 100, *See also, State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306.

{¶55} "Thus, a record after *Foster* may be silent as to the judicial findings that appellate courts were originally meant to review under 2953.08(G)(2)." *Kinser, supra* at ¶ 32 quoting *Kalish, supra* at ¶ 12. However, although *Foster* eliminated mandatory judicial fact-finding, it left intact R.C. 2929.11 and 2929.12, and the trial court must still consider these statutes. *Id.* citing *Kalish, supra* at ¶ 13. *See also State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1. Accordingly, post-*Foster*, "there is no mandate for judicial fact-finding in the general guidance statutes. The court is merely to 'consider' the statutory factors." *Foster, supra* at ¶ 42; *State v. Rutter*, 5th Dist. Muskingum No. 2006-CA-0025, 2006-Ohio-4061. Trial courts, however, are still required to consider the general guidance factors in their sentencing decisions.

{¶56} There is no requirement in R.C. 2929.12 that the trial court state on the record that it considered the statutory criteria concerning seriousness and recidivism or even discussed them. *Kinser, supra* at ¶ 34 citing *State v. Polick*, 101 Ohio App.3d 428, 431, 655 N.E.2d 820(4th Dist. 1995); *State v. Woods*, 5th Dist. Richland No. 05 CA 46, 2006-Ohio-1342, ¶ 19 ("... R.C. 2929.12 does not require specific language or specific findings on the record in order to show that the trial court considered the applicable seriousness and recidivism factors"). (Citations omitted).

{¶57} When it imposed the sentence for tampering with evidence, the trial court stated:

> * * * The Court has considered the purposes and principles contained in
> Revised Code Section 2929.11, and I've considered the seriousness factors
> in Revised Code Section 2929.12. And I've considered the recidivism factors
> in Section 2929.12. And I do find that a prison term is consistent with

the purposes of Revised Code Section 2929.11, and the defendant's not amenable to an available community control sanction.

* * *

And the Court finds that, that the Count 3, the tampering with evidence, was committed as a course of conduct, and that the seriousness factors under Section 2929.12, your relationship with the victim under 2929.12(B)(2) – or (B)(6). And that I do not see any genuine remorse, Mr. Sarge, and based upon the video interview, the tampering and communications with others after the offense was committed, and so it will be consecutive under Counts 1, 2 and 3.

(T. 16-17).

{¶58} We find the trial court considered and applied the factors set forth in R.C. 2929.11 and 2929.12 when it imposed the maximum sentence for tampering with evidence. The record supports the trial court's findings. The sentence, therefore, is not contrary to law.

{¶59} Sarge's second Assignment of Error is overruled.

## CONCLUSION

{¶60} The judgment of the Knox County Court of Common Pleas is affirmed.

By: Delaney, J.,

Gwin, P.J. and

Wise, Earle, J., concur.